**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LORIE GRABER and AMBRIA SIMPSON, <br><br> Plaintiffs, <br><br> vs. <br><br> HAMID ZAIDI and VITAL SYSTEMS CORPORATION, <br><br> Defendants. | 3:09-cv-00475-RAM <br><br> **MEMORANDUM DECISION AND ORDER** |

Before the court is Plaintiffs' Motion for an Order Permitting Plaintiffs to File Motion to Amend Complaint. (Doc. #30.)[1]  Also before the court is Plaintiffs' Motion to Amend/Correct Complaint. (Doc. #31.) Defendants have opposed. (Doc.#32). The third motion before the court is Defendants' Motion for Summary Judgment. (Doc. #33.) Plaintiffs have opposed the motion (Doc. #34), and Defendants have replied (Doc. #35). After a thorough review, the court denies Plaintiffs' Motion for an Order Permitting Plaintiffs to File Motion to Amend Complaint and Plaintiffs' Motion to Amend/Correct Complaint. The court grants Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Plaintiffs Lorie Graber and Ambria Simpson are former employees of Vital Systems Corporation. (Pls.' Compl. 2 (Doc. #2).) Defendant Zaidi is the President of Vital Systems Corporation. (*Id.*) Plaintiffs bring this action against Defendants alleging claims for the

---

[1] Refers to the court's docket number.

following: retaliation, wrongful termination, breach of contract of employment, and breach of covenant of good faith and fair dealing. (*Id.* at 2-9). Plaintiffs seek damages, costs, attorney's fees, and injunctive relief. (*Id.* at 9-10.)

Plaintiffs allege they experienced a hostile work environment, sexual harassment, and gender discrimination while employed by Vital Systems because of the conduct and statements of Zaidi. (Pls.' Compl. 3-6.) Graber claims that Zaidi sexually harassed her through verbal abuse, insults, and intimidation. (*Id.* at 3.) According to Graber, on one occasion Zaidi called her a "stupid woman," commented that "he could not talk to you people from Venus," and demanded she put a male on the phone because he could communicate with a male. (*Id.*) Graber claims that Zaidi subjected her to retaliation by escalating the severity and frequency of his abusive behavior, demanding that she use a black pen instead of a blue pen or else face disciplinary action, and harassing her about another employee taking leave. (*Id.*) Graber alleges that she was constructively discharged because of Zaidi's behavior. (*Id.* at 4.)

Simpson alleges that on several occasions Zaidi would ask her to complete a task and later berate her for undertaking the precise task he asked of her. (*Id.* at 4-6.) On one occasion, Simpson claims Zaidi asker her to approach another employee about the company dress code because of the length of the employee's shorts. (*Id.* at 4.) After Simpson conversed with the employee and the employee became angry, Zaidi chastised Simpson for her actions and said "that he was a man and did not mind the short shorts [as] much." (*Id.*) Simpson claims this comment made her very uncomfortable. On another occasion, Simpson alleges that Zaidi told her that he would rather "[other employees] be mad at you than me[;] you are a woman[;] you can handle it." (*Id.* at 5.) Simpson alleges that Zaidi repeatedly criticized female employees more so than males. (*Id.*) According to Simpson, Zaidi said he "hated Linda" and that he "hated Safiye" and "should just kill her." (*Id.*) Simpson alleges that in October 2006, Zaidi asked her to show a male employee where to file a quote. (*Id.* at 6.) Simpson claims that after she showed the male employee the binder for filing, Zaidi screamed at her "you do it" and threw the three-hole punch at her. (*Id.*) Although the three-hole punch did not hit her, Simpson

alleges the she "was so scared she could not move." (*Id.*) Last, Simpson states that Zaidi refused to give her an employee review until she quit smoking and ignored Simpson's concerns that other employees were using fake alien and social security cards. (*Id.*) According to Simpson, Zaidi began sexually harassing her by making her do things that are not legal. (*Id.*)

## II. MOTION FOR AN ORDER PERMITTING PLAINTIFFS TO FILE MOTION TO AMEND COMPLAINT

On January 21, 2010, Plaintiffs moved for an order permitting them to file a motion to amend their complaint. (Doc. #30.) Plaintiffs argue that a confluence of unfortunate events caused their counsel undue delay in this matter supporting a finding of excusable neglect. (*Id.* at 1.)

**A.  LEGAL STANDARD**

Fed. R. Civ. Pro. 6(b) provides, in relevant part, "[w]hen an act may or must be done within a specified time, the court may for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." The court can grant an enlargement of time after the deadline has expired when (1) cause is shown, and (2) the failure to act was the result of excusable neglect. The Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 390-95 (1993) set forth the factors to be considered in determining excusable neglect: (1) the prejudice to the opponent; (2) the length of the delay and its potential impact on the course of the judicial proceedings; (3) the causes for the delay, and whether those causes were within the reasonable control of the moving party; (4) the moving party's good faith; (5) whether the omission reflected professional incompetence, such as an ignorance of the procedural rules; (6) whether the omission reflected an easily manufactured excuse that the court could not verify; (7) whether the moving party had failed to provide for a consequence that was readily foreseeable; and (8) whether the omission constituted a complete lack of diligence.

/ / /

/ / /

3

**B. DISCUSSION**

Pursuant to the Stipulated Discovery Plan and Scheduling Order filed November 2, 2009, the last day to complete discovery was February 23, 2010, and the last day to amend pleadings was November 25, 2009. (Doc. #17.) Plaintiffs filed their instant motion on January 21, 2010.

On balance, application of the *Pioneer* factors weighs against a finding of excusable neglect. As to the first two factors, Plaintiffs moved for an order to allow them to file a motion to amend the complaint nearly two months after the November 25, 2009 deadline and one month before the close of discovery. Summary judgment has already been briefed in this case. Allowing Plaintiffs to amend their complaint would likely require discovery to be reopened and require Defendants to re-file their motion for summary judgment. Both actions would result in substantial prejudice to Defendants. Therefore, the first two factors weigh against Plaintiffs. As to the third factor, Plaintiffs assert that their delay resulted from counsel becoming ill, counsel's significant other suffering injury and becoming ill, and counsel's secretary needing to take an unexpected three weeks out of the office. (Doc. #30 at 1-2.) These causes for delay were not within reasonable control of Plaintiffs, and thus, the third factor tips in Plaintiffs' favor. Although the court declines to find that Plaintiffs did not act in good faith or that Plaintiffs' actions reflect professional incompetence, the court finds that Plaintiffs' reasons for delay are not easily verifiable and that some of Plaintiffs' actions show a lack of diligence. Plaintiffs first moved to amend the complaint on December 9, 2009. (Doc. #21.) Plaintiffs filed their first motion to amend after the November 25, 2009 deadline and after Defendants filed their first motion for summary judgment. The court notes that Plaintiffs' first motion to amend, like the instant motion, was not timely filed. Furthermore, Plaintiffs seek to add two additional claims in their proposed amended complaint that Plaintiffs acknowledge "have their roots in the statement of facts offered in the original complaint." (Doc. #31 at 2.) Because Plaintiffs had full knowledge of the factual basis supporting their new claims since the filing of their original complaint, their tardiness in adding these claims indicates a lack of diligence.

The court concludes that considering all the factors together weighs against a finding of excusable neglect. Therefore, Plaintiffs' Motion for an Order Permitting Plaintiffs to File Motion to Amend Complaint is denied.

### III. MOTION TO AMEND COMPLAINT

On January 21, 2010, Plaintiffs moved to amend their complaint arguing that the expanded claims in the amended complaint are rooted in the same facts as the original complaint. (Doc. #31.) Plaintiffs argue that allowing them to amend their complaint will not impose any prejudice or surprise on Defendants. (*Id*.)

Defendants contend that Plaintiffs' motion to amend is untimely and unfair because Plaintiffs move to amend outside the time specified in the scheduling order and amendment will only serve to ambush Defendants. (Doc. #32 at 3.)

**A.   LEGAL STANDARD**

Amendments to the pleadings under Rule 15 of Federal Rules of Civil Procedure are generally favored. *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir.), *cert. denied*, 519 U.S. 1006 (1996). This liberal amendment policy no longer controls, however, once the court has entered a pretrial scheduling order pursuant to Rule 16. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294-95 (9th Cir. 2000). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If that party was not diligent, the inquiry should end. *Id*. "[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment).

If the moving party can show good cause under Rule 16(a), the court must then consider whether the amendment is proper under Rule 15 of the Federal Rules of Civil Procedure. *Sosa*

5

*v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998); *Johnson*, 975 F.2d at 607-08. If permitting an amendment would (1) prejudice the opposing party, (2) produce undue delay in the litigation or (3) result in futility for lack of merit, or (4) if such amendment is brought in bad faith, the court may deny such motion. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing these factors among others to be considered). Prejudice is the most important factor to consider. *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321, 330-31 (1971). Absent prejudice, or a strong showing under any of the remaining *Foman* factors, a presumption exists in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B.   DISCUSSION**

Because the court denies Plaintiffs' motion to allow them to file a motion to amend their complaint and Plaintiffs move to amend the complaint outside the time permitted by the scheduling order, the court applies the "good cause" standard under Rule 16. As discussed above, Plaintiffs fail to show that they acted with "excusable neglect." Plaintiffs similarly fail to demonstrate "good cause" for their belated motion to amend for the same reasons detailed above with respect to "excusable neglect."

Furthermore, even if Plaintiffs could show good cause, the prejudice to Defendants is substantial. In this circuit, "[a] need to reopen discovery and therefore delay the proceedings supports a . . . finding of prejudice from a delayed motion to amend the complaint." *Coleman v. Quaker Oats Co.*, 232 F.2d 1271, 1295 (9th Cir. 2000) (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)). The longer the delay to amend, the less a showing of prejudice is needed for denial of the motion. *In re Circuit Breaker Litig.*, 175 F.R.D. 547, 551 (C.D.Cal. 1997) (analyzing prejudice from amendment under Rule 15) (citing *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993)). Discovery closed on February 23, 2010, and summary judgment has been fully briefed. Allowing Plaintiffs to amend their complaint to add new claims would likely require additional discovery and supplemental briefing. Compounded with the prejudice to Defendants is the undue delay

6

resulting from such a course of action. Therefore, the court denies Plaintiffs' motion to amend the complaint.

## IV. SUMMARY JUDGMENT

**A.   LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that

evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.  DISCUSSION**

    1.    <u>Retaliation Claim</u>

Graber claims that Zaidi retaliated against her and singled her out for termination after she filed a gender discrimination and sexual harassment claim against him. (Pls.' Compl. 6.) Defendants argue that Graber fails to establish that she was acting to protect her rights or that she suffered an adverse employment action to support a retaliation claim. (Defs.' Mot. for Summ. J. 8 (Doc. # 33).)

To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its decision. *Ray*, 217 F.3d at 1240. If the defendant demonstrates such a reason, the burden shifts back to the plaintiff to show that the defendant's reason was a mere pretext for a discriminatory motive. *Id*.

Here, Graber fails to show that she engaged in protected activity. The opposition clause of 42 U.S.C. § 2000e-3(a) states in relevant part, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] . . . ." 42 U.S.C. §

2000e-3(a). Verbal complaints of discrimination qualify as "protected activity." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1068 (9th Cir. 2003). However, "not every act by an employee in opposition to . . . discrimination is protected." *Silver v. KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978). "The opposition must be directed at an unlawful employment practice of an employer . . . [and must be] reasonable in view of the employer's interest in maintaining a harmonious and efficient operation." *Id.* Furthermore, "[t]he employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to *some* practice by the employer that is allegedly unlawful." *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983)(emphasis in original).

Here, Graber claims that she engaged in protected activity when she informed Zaidi that other employees had complained to her about him. (Pl.'s Compl. 4.) The content of the complaints made by the other employees to Graber appears to center on Zaidi's temper. Graber testified at her deposition that every day she would watch Zaidi "yell, scream, bang on tables, [and] put his hand in people's face[s]." (Def.'s Reply Ex. 6 at 92 (Doc. #35).) Graber testified that she "would see the blood vessels in [Zaidi's] neck come out" and that "[Zaidi] would turn red." (*Id.*) Graber states that she saw Zaidi engage in this behavior with "Dominic . . . Mary Ann . . . [and] Linda. (*Id.*) According to Graber, Zaidi's temper was unpredictable. (*Id.* at 92-93.) Graber initially testified that Zaidi would get angry at both males and females, but later stated that he would mostly get angry at females. (*Id.* at 93-94.) Graber claims that when she told Zaidi that she had received complaints, Zaidi gave her "an ultimatum to either produce names of people who had . . . discussed issues with [her] or find another job." (*Id.* at 94.) Graber states that she did not want to disclose to Zaidi who had complained because she was concerned those employees would be fired. (*Id.* at 95.) Graber claims that she suggested to Zaidi the option of having an outside investigator look into the complaints, but Zaidi said he wanted to do the investigation himself.

Although Graber notified Zaidi of complaints made by other employees, Graber fails to show that she engaged in "protected activity" by telling Zaidi that those complaints centered

9

on unlawful discrimination. Graber refused to divulge to Zaidi the content of the complaints or the identity of those complaining. At most, Graber states that Zaidi became angry at females more often than males. However, Graber does not allege that the complaints from other employees were made *because* Zaidi was engaging in unlawful gender discrimination or that she communicated to Zaidi that she, herself, was complaining of unlawful gender discrimination. Thus, Graber fails to demonstrate that she engaged in an activity protected under Title VII, and Defendants are entitled to summary judgment on Graber's Title VII retaliation claim.

2. Wrongful Termination Claims

Graber alleges that she was terminated as a result of her gender and the exercise of her First Amendment rights[2] in violation of Title VII. (Pls.' Comp. 7.) Graber claims that she was constructively discharged because Zaidi tormented her to the point where she felt threatened. (*Id.* at 4.)[3]

Simpson claims that Zaidi engaged in gender discrimination in violation of Title VII. (*Id.* at 7.) Simpson alleges that she was forced to resign as a result of a hostile work environment created by Zaidi. (*Id.*)

Defendants argue that Graber fails to show that she was constructively discharged and that Simpson's Title VII claim is time-barred. (Defs.' Mot. for Summ. J. 5-9.)

a. Graber

"[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to

---

[2] Title VII makes it an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII does not prohibit discrimination based on an individual's exercise of her First Amendment rights. Thus, Title VII is an improper vehicle by which to bring a First Amendment claim.

[3] Graber initially alleges in her complaint that she was "terminated." (Pls." Compl. 7.) However, in her opposition to summary judgment, she clarifies that she actually "resigned." (Pls.' Opp'n to Summ. J. 3 (Doc. #34).)

10

overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000)). "[A] plaintiff alleging a constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment." *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996)). When a plaintiff claims that constructive discharge resulted from a hostile work environment, he or she "must show working conditions [were] so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). Constructive discharge involves "something more" than normal harassment, and it does not lie "[u]nless conditions are beyond 'ordinary' discrimination[.]" *Suders*, 542 U.S. at 142 (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997)). The high standard for a constructive discharge claim is "predicated on the notion that Title VII policies are best served when the parties, if possible, attack discrimination within the context of their existing employment relationships." *Watson*, 823 F.2d at 361.

Here, Graber fails to show that the conditions of her employment became sufficiently egregious to result in constructive discharge. Graber claims that Zaidi sexually harassed her through verbal abuse, insults, and intimidation. (Pls.' Compl. 3.) According to Graber, on one occasion Zaidi called her a "stupid woman," commented that "he could not talk to you people from Venus," and demanded she put a male on the phone because he could communicate with a male. (*Id.*) Graber alleges that Zaidi would make comments to other women about the color of their nail polish. (Defs.' Mot. for Summ. J. Ex. 5 at 64.) Graber claims that Zaidi would refer to her and other women as "baby" and "sweetheart." (*Id.*) According to Graber, Zaidi's temper was unpredictable and he would mostly get angry at females. (Def.'s Reply Ex. 6 at 92-94.) Graber claims that when she told Zaidi that she had received complaints about him, Zaidi gave her "an ultimatum to either produce names of people who had . . . discussed issues with [her] or find another job." (*Id.* at 94.)

11

While the comments and conduct Graber alleges are inappropriate and in bad taste, they fail to evidence "something more" than normal harassment or ordinary discrimination. Both the "stupid woman" incident and the incident where Zaidi threatened to terminate Graber amount to isolated occurrences rather than a continuous pattern of discriminatory treatment. Additionally, Graber fails to produce evidence that Zaidi threatened to terminate her because of her gender. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination "because of" sex). Graber's testimony regarding this incident tends to show that Zaidi threatened to terminate her because she refused to provide him the names of those who had complained. The most frequent conduct to which Graber was subject was being referred to by Zaidi as "baby" and "sweetheart." However, although these comments are boorish, they are not particularly extraordinary or egregious. Without more, no reasonable juror could find that Graber was forced to resign because of discriminatory working conditions. To meet her burden, Graber must identify objectively intolerable working conditions. In sum, the conduct in this case is not of the order of magnitude to establish a genuine issue of material fact as to whether Graber was constructively discharged. Therefore, the court grants Defendants summary judgment on Graber's wrongful termination claim.

            b.      <u>Simpson</u>

Once a party receives notice from the Equal Employment Opportunity Commission (EEOC) of her right to sue, she has ninety days to file a civil action. 42 U.S.C. § 2000e-5(f)(1). This ninety-day period acts as a statute of limitations. *Payan v. Aramark Mgmt. Servs. Ltd.*, 495 F.3d 1119, 1121 (9th Cir. 2007). If a party fails to file suit within this time period, "the action is time-barred." *Id.* The ninety-day period is measured "from the date on which a right-to-sue notice letter arrived at the claimant's address of record." *Id.* at 1122. If this date is unknown, there is a presumption that the "letter issuance date is also the date on which the letter was mailed" and there is also a rebuttable presumption that the plaintiff received the letter within three days of mailing. *Id.* at 1123, 1126. Here, the EEOC mailed Simpson's right to sue letter on June 27, 2008. (Defs.' Mot. for Summ. J. Ex. 3.) Assuming Simpson received

the letter on June 30, 2008, within three days of mailing, Simpson must have filed her Title VII action by September 28, 2008. Simpson did not file her suit until August 2, 2009. (Pls.' Compl. 12.) Thus, Simpson's Title VII claim is time-barred because it was filed more than ninety days after Simpson received her right-to-sue letter from the EEOC.

Simpson argues that the courts have modified the ninety-day requirement in some circumstances. (Pls.' Opp'n to Summ. J. 6-8.) In support of her argument, Simpson relies on Fifth Circuit authority applicable to suits where a plaintiff who had not filed EEOC charges either (1) joined or intervened in a lawsuit where the original plaintiff had fully exhausted the administrative requirements or (2) was a member of a class in a class-action suit. *See Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006); *Bettcher v. Brown Schs., Inc.*, 262 F.3d 492, 494 (5th Cir. 2001)*; Wheeler v. American Home Products Corp.*, 582 F.2d 891, 897 (5th Cir. 1977)*; Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968). In this case, Simpson is an original plaintiff – not an intervenor or a plaintiff from another case that has been consolidated with this case. Additionally, the instant case is not a class action. The authority Simpson cites is inapplicable to the facts of her case. The court rejects Simpson's argument and concludes that Defendants are entitled to summary judgment on Simpson's Title VII wrongful termination claim.

### 3. Breach of Contract of Employment Claims

Plaintiffs claim they were employed by Vital Systems pursuant to an implied contract of employment. (Pls.' Compl. 8.) According to Plaintiffs, Defendant Zaidi breached their contracts by committing acts resulting in constructive discharge. (*Id.*) Defendants argue that Plaintiffs were at-will employees and that they fail to establish that any implied contract existed. (Defs.' Mot. for Summ. J. 9-11.)

Under Nevada law, employment is presumed to be at-will in a wrongful termination dispute. *Yeager v. Harrah's Club, Inc.*, 897 P.2d 1093, 1095 (Nev. 1995). "An employee may rebut this presumption by proving by a preponderance of the evidence that there was an express or implied contract between his employer and himself that his employer would fire him

only for cause." *Am. Bank Stationery v. Farmer*, 106 Nev. 698, 799 P.2d 1100, 1101-02 (Nev. 1990). "[E]mployers may prevent implied contractual liability from arising in the first instance by including a disclaimer in their employment handbooks." *Baldonado v. Wynn Las Vegas*, LLC, 194 P.3d 96, 106 (Nev. 2008)

Here, Plaintiffs fail to provide any evidence that they were employed pursuant to an implied contract with Vital Systems. Furthermore, Defendants produce evidence showing that Graber and Simpson were advised that their employment was at-will in both their job applications and employee handbooks. (Defs.' Mot. for Summ. J. Ex 1 at 3-4, 8-10.) Because Plaintiffs fail to establish the existence of an implied contract, their claims for breach of contract fail as a matter of law. Therefore, Defendants are entitled to summary judgment on Plaintiffs' breach of contract claims.

4.      <u>Breach of Covenant of Good Faith and Fair Dealing Claims</u>

Plaintiffs claim that Defendants violated the statutory and implied-in-law covenant of good faith and fair dealing by removing Plaintiffs from their positions. (Pls.' Compl. 8-9.) Defendants argue that Plaintiffs fail to state claim for relief because they were at-will employees and did not have a continuing employment contract with Vital Systems. (Defs.' Mot. for Summ. J. 11.)

Under Nevada law, to prevail on a claim for the breach of the covenant of good faith and fair dealing, a plaintiff must show, among other things, the existence of an enforceable contract. *Martin v. Sears, Roebuck & Co.*, 899 P.2d 551, 555 (Nev. 1995). A claim for bad faith discharge in violation of the implied covenant of good faith and fair dealing is "not applicable to at-will employment." *Id.* As discussed above, Plaintiffs fail to show that they were employed by Vital Systems pursuant to an employment contract. Thus, Plaintiffs' claims for breach of the covenant of good faith and fair dealing fail as a matter of law, and Defendants are entitled to summary judgment.

///
///

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion For An Order Permitting Plaintiffs to File Motion to Amend Complaint (Doc. #30) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend/Correct Complaint (Doc. #31) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion For Summary Judgment (Doc. #33) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant' Motion to Dismiss (Doc. #5) and Defendants' Motion for Summary Judgment (Doc. #7) are **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 12, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

15